SRI BALAJI SRI BALAJI Next case will be 07-1065, SRI INTL v. Internet Security Systems. Mr. Shugenbach? MR. SHUGENBACH Good morning, Your Honor. Counsel, may it please the Court. This is not a printed publication case. I want to spend the majority of my time on that issue. I'll touch briefly on enablement. If you put this case in the context of this Court's precedence on printed publication, it seems to us reasonably clear that this is not really very close to the line. This Court has decided on the order of half a dozen, maybe seven printed publication cases in recent times. Those cases fall into a few categories, and I think looking at the categories is instructive as to just how different this case is. One of those categories has to do with deposits with or publications by foreign capital offices. That's the Weyer case written by Judge Rich, the Bruckle-Weyer case. This, of course, is a completely different set of facts from that. Another set of cases, and by far the most prevalent set of cases, are library cases, which some of the members of this particular panel are familiar with. The Cronin case, the Bader case, the Hall case, and even actually the Mopex case that defendants rely on in the end is a library case. This is not a library case. We're not talking about a publicly accessible location where a publication was deposited. Wait, an FTP site is not a publicly accessible location? Certainly not in the sense of a library. It is accessible only in the sense of, on this record, if somebody gave the specific path to an individual, you can access it. Yes. Well, you don't necessarily have to have a specific path to the actual live traffic paper publication, right? You just need to know the FTP address, and you can navigate your way through the menu. Well, the answer to that question is nobody knows. Whether this site was navigable in 1997... Okay, well, they produced evidence that seemed to me to suggest it was navigable. They certainly produced evidence of its current navigability, and they produced evidence of emails by the patentee that told people, go to this site, this subfolder, this subfolder, this subfolder, and you all are the ones with all the evidence regarding what this site should have because it's your site. So it seems to me they've put forth a prima facie case of its navigability, and you've put forth nothing other than they haven't proven it was navigable. Well, I'm glad you raised that because I think the briefing may sound as though we're trying to sort of benefit from our own inability or negligence in maintaining records or something like that. It's important the court understand there's two categories of evidence here, okay? There's what happened in 1997 and whether there is evidence of what the site was in 1997. There is no evidence of that except the emails that show specific documents that were or were not available on the site at that time, and they have complete paths, okay? Now, from those paths, you can determine that there existed a pub folder in 1997. We agree. You can determine there existed in 1997 another folder, maybe a dev folder, okay? But that doesn't mean that you can navigate around the folders to find what it is you wanted to find. But your patentee's emails told people to do exactly that. No. He told them to access the paper in the following route. But he didn't tell them to navigate. I mean, the rhetoric about navigation is something that the defendants supplied. What he told them is you can go to csl.sri.com, okay? We know that there is an FTP site SRI maintains. We don't dispute that. There is a site. Every single time Mr. Porras directed somebody to that site, he gave them a complete, with one exception, which is Teresa Wong, which we deal with in our papers, an ex-SRI employee. He told them exactly where to go and exactly what the complete path name was. There are eight examples. One was Ms. Blunt. The other seven were outsiders. Now, if it were true, if we're going to debate this navigability point, if it were true that people knew to navigate, why would Mr. Porras be giving these individuals who the district court believed and the defendants have argued are very sophisticated technically, why would you have to give them the complete path? Why would you have to tell them exactly where that file is? Because it's easier. It's easier to direct someone, you know, as opposed to come to my street and look for my car just to give them my street address, right? It is, okay. It's easier, so that's why. It is easier. But what we're talking about here really around we're arguing over an inference, whether they should get an inference. I mean, that's really not appropriate in the context of this case. But what evidence have you all presented that it wasn't navigable? Because they presented some that it was. They presented the fact that, you know, it is navigable now and that there are these e-mails that suggest it was similarly navigable in 1997. So what contrary evidence have you presented? The answer, first of all, it's their word, okay, which is important. Right, but they've put something forward. It's not insignificant. Using 2006 and 2007 evidence of what can happen today. And e-mails that suggest that the same was true. Well, but again, with all due respect, I think Your Honor may have a view of what those e-mails show. But that's an inference based on those e-mails that was telling people it was still in the air to navigate. The other inference is they couldn't navigate, and that's why you had to give them the complete path. Mr. Schertenbach, this is the security community. Wouldn't they know how to navigate these things? We're talking about pretty sophisticated people, aren't we? Yes, we are. But, Your Honor, if you look at the – and I don't dispute that if the site were navigated, if somebody happened to go there in the Saturday period where the paper was there, they might have found it. We don't dispute that. But that doesn't make this a current publication case, right? That was true in the Boehner case. That's true in other cases that this Court has decided. Somebody could possibly have found it. The question is, is it sufficiently publicly accessible in the context of this Court's precedence? And the answer here has got to be no. I mean, you look at – if you look at the overall set of facts here as to what happened in 1997, you have a gentleman, Mr. Porras, who at the same time that he puts this backup copy on the FTP site, he puts an abstract, a two-page abstract of this paper on the worldwide website. Totally different sites, okay? Both maintained by SRI. Now, at this – Is there any expectation of confidentiality because this is kind of a pre-venting of some – a pre-viewing of something that's going to be presented later at a conference? Yes, absolutely, Your Honor. And, in fact, I don't believe defendants dispute – in the end, dispute that proposition. That's something, in fact, this Court in Klopfenstein's case said was quite important and is a factor that ought to be considered. Was there a reasonable expectation as – you know, this is a scientific, peer-reviewed process of confidentiality. There's evidence in the record Mr. Porras was asked this in deposition, and he said, Absolutely. When you're submitting a paper to a symposium or a conference, it is confidential. Everybody knows those things are not shared around. And in this case, there's nothing Mr. Porras did that indicated anything other than he sent it privately to Mr. Bishop, and he said, as a backup, I'll stick it for seven days on the FTP site, never expecting Mr. Bishop to go there, let alone that people, you know, in the world at large would find it. Now, Judge Moore, just to get back to your point, you said, What other evidence? To me, the most powerful evidence is the fact that, after the fact, the very people who were supposed to have navigated and been capable of finding this paper didn't. Because they sent emails to Mr. Porras saying, Give us a copy. We'd like the full copy. So you've got a worldwide web posting with a legend at the bottom that says, You can't have the full paper now. Check back in November. And people do. But, counsel, I mean, our precedent has been really clear that it's not whether or not something was in fact accessed, but whether or not it could be accessed. I agree. So the fact that nobody actually might have looked at it, like if there's a counter on the bottom, it might still read zero today. Who knows? But the fact that whether someone looked at it or not is not really the relevant inquiry, unless I'm misunderstanding. I mean, if your client expected this to be confidential, I mean, certainly it's within his sophistication to understand passwords or encryption keys and all those other things. I mean, goodness, they couldn't have a more sophisticated computer group than the groups that people were looking at now. But none of that was employed, was it? Because he had a reasonable expectation that the paper was confidential. Why did he have such an expectation? Did he put confidential on it? Did he put the words on it? Confidential? On the paper itself, no. Other than his ex-post statement that he expected it to be confidential. And I might even agree with you that peer-reviewed type submissions generally are, but not once you post them on the Internet, even in the absence of Google. But see, it's so hard in this case to forget everything we know about the Internet today. This is not an Internet posting case. SRI had a worldwide website at the time. They have one today. This issue before you has nothing to do with the worldwide website. That's where defendants started in district court. They based their motion on the worldwide web posting, and we showed that there was no posting of the paper on the worldwide web. It was a two-page abstract. So they gave up on that argument and retooled their case in reply to focus on this temporary residence on the FTP for seven days. And that has become sort of the Internet case. And, in fact, they're very careful to call it an FTP website. But back in the 90s, wasn't FTP used even more widely than today? I'm sorry, Mr. – Back in the 90s, wasn't FTP used even more widely than today? There isn't evidence in the record specifically to that effect, Your Honor, so I guess we don't know one way or the other. Maybe so for the transfer of files if somebody was directed to the site and told that the files were there. This was in a public folder, not a private one, wasn't it? Is that significant? It was in the Emerald folder, is where Mr. Korris put it, public in the sense that if somebody had the address, they could go get the document from that specific folder. Yes. Whether other areas of the site were restricted or not, we don't know in 1997. We don't know the evidence that's in the record. Do you want to say your rebuttal? I do, Your Honor. Mr. Brad – Mr. Slutsky. Slutsky, I'm sorry. May it please the Court, I'm Brad Slutsky. I'm the representative for Pele Internet Security Systems. I'll address the live traffic paper, which anticipates all four SRIs. You've got to have a specific kind of software to use this FTP site, right? Multiple kinds of software. Yes, but you've got to have some specific – this is the early dark ages of cyberspace. You've got to have precise commands, precise equipment, and there really isn't any clear evidence that anybody really went there. Why is this different from an uncataloged dissertation? Your Honor, I would respectfully submit that there is a lot of evidence that people went there. In fact, the website was publicized quite a bit by SRI itself. In the record, at A1538 and going on, there's a long list of SRIs publications going back to 1985. Yeah, and I suppose people can go thumb through uncataloged dissertations, too, at libraries. I'm sure a lot of students do that and profit from it. The question, though, is whether this is more like an uncataloged dissertation or one that's cataloged. Well, I would suggest that in the district court found that this site was indexed by virtue of the structure of the directories on the site. It only took, the evidence shows, three clicks to find this paper. You get to the main FTP site, and from there, as they've acknowledged, you can go to the pub directory instead of the dev directory for development information. Why would you know to do those things? Because you're an expert in the field of computer security, you probably have an FTP site yourself, which is one of the factors as to who's the audience here. From the pub directory, you would go to the Emerald directory. The evidence shows that Emerald was a well-publicized, the articles that I've just referred to in the record show, it was a well-publicized security research project. And once you were in the Emerald directory, there was the paper itself relating to the NDSS 98 conference. You didn't say they'd go to a website, did you? If I did, I didn't mean to. I didn't think you did. Judge Moore, I think you really put your finger on it here. The issue is that we did meet our prima facie case of establishing anticipation by clear and convincing evidence, and they've really come forward with nothing in response. And as a result, they lose on summary judgment under Matsushita. Before I talk about all the evidence of what we did show with respect to navigability, which extends from 1994 through 2006, I want to talk about a couple of things that we did not have to show that they point to. First, as Rana noted, we do not have to show that the paper was accessed. It is sufficient to show that it was accessible. Second, we do not have to show that there was an intent to publicize the paper. They quote the sports decision in Wire for their argument that intent should be examined to determine whether it was a printed publication. But they leave off the very end of the sentence they quote, which says that intent is, quote, neither always conclusive nor requisite. I think we leave that part out. But what about the cryptic name of the paper, NDSS98.PS, PS meaning PostScript? Isn't PostScript printer language to print out a document? Isn't that very title misleading? Not only are we uncatalogued, we're maybe miscatalogued with that kind of a title. Any thoughts on that? Well, the .PS is an extension that we see throughout the record multiple times. That's how they publish their papers. It's in a PostScript format. It's likened to a PDF format that we use more often today. The NDSS stood for the Network of Distributed Security Symposium. And 98 being the one that is coming up in a few months. So the name of the file itself indicates that it has something to do with security. And the fact that it's in the Emerald Directory indicates that it has something to do with security. What's the difference between your case and Ray Cronin? I just want to be sure that I've got the right facts in the Cronin case. Well, where there was a catalog, there was an index card in the catalog. It was indexed by the author's name there. So the index there was criticized for not relating to the subject matter of the paper, making it difficult to identify the subject matter of what you were looking for. Why is your case different from that? Here the indexing does relate to the subject matter of the paper. It's on a site that's publicized as a security site. And it's in a directory, the Emerald Directory, that was publicized as the most recent security research of this company. And the name of it relates to a security conference coming up. So we know that this file, the index tells you that this file is the latest 1998 security information here in 97 that's posted relating to the latest research project on security by SRI on a site that was well publicized for relating to security. I want to dispose of this notion that we didn't come forward with evidence, even in the relevant time frame, that the website is navigable. And I submit that the evidence shows that from 1994 through 2006, the evidence shows the site was navigable. But can we go back to the title point just a little bit? There isn't a title on this. As our presiding judge pointed out, you'd expect to see something that might alert people that this is an important paper on a topic. Instead, it's NDSS98.PS. Well, NDSS is the acronym. I understand what it is for a conference. What's the title of the paper? The title of the paper is live traffic, something or other. You're not going to know, this isn't going to identify what you're looking for. We're back to the Cronin case where the cataloging, if it is there at all, is misleading. Well, I don't think it's misleading. This directory and the name all indicate that this is the latest security research from a company that publicized that this is where they keep their security research. So if you go into this Emerald directory, which is the latest security project in this company, and you see that I have a paper relating to something that's coming up next year in 98, it would be a paper that would be of interest to people. And they would know that it would relate to security, and in fact it does. It's their latest security research. Counsel, if we disagree with you that it was indexed, or disagree with the lower court that it was indexed, and so therefore it makes the Cronin inquiry a little more difficult, what about Klopfenstein, Judge Prost's case, Klopfenstein? In that case she says if something is temporarily displayed, which this clearly was temporary, not distributed or indexed, she articulated a four-factor test for public accessibility then. How do you think this case compares to that? Well, I'm glad you pointed that out. Klopfenstein is a case where it was not indexed. The papers were just accessible in a place where people had access to them for a period of three days. And the factors in that case were the length of time the document was accessible. There it was three days. Here it was a week. And I would submit that our week is a much longer week than three days there because you don't have to go to a conference and buy a plane ticket. You don't have to be in the presence of the documents there during the time that the conference is open or the building is open. Here it's 24 hours a day, seven days during the week, wherever you happen to be, at your office, at home, in an internet cafe, anywhere that you have internet access you have access to this document during that week, as opposed to in the Klopfenstein case where it was only during the time that the paper was accessible. The next factor in the Klopfenstein is expertise of the target audience. More as you pointed out, here we have computer security experts. It's easy within their expertise to make three clicks on an anonymous FTP site. Reasonable expectation that the document would not be copied. With all respect to my brother at the bar, I think that if you put a document on an FTP site that you yourself have advertised as a source of security information that others have posted on Usenet and that you've sent email messages that this is a site for security information, where there's a Swedish article that cites to your site as a place that has security information, you cannot have it reasonable. And you don't put any password protection, no encryption. You don't label the document as confidential. You don't even put a copyright notice on the submission, even though the call for papers had a copyright notice. And there are no instructions that it not be copied. You cannot reasonably expect that it won't be copied. And, of course, the last factor is ease of copying. And here the paper is on a file transfer protocol site, but the very purpose is to make electronic copies of this electronic document. And so I think the Klopfenstein papers weigh heavily in favor of the document being a printed publication. But I do want to turn quickly to the... Well, you're going to be going into your colleague's time if you want to use his. You divided it up for some reason. Given that they have not really addressed enablement and the fact that there's a dispute about what happened in 97, I do want to address this even if we use that time, unfortunately. All right. The Usenet printout at A3558, they cite it on pages 9 and 23 of their brief in support of the notion that there was one entry there that shows a full URL. They never address the points raised in our brief that show that many of those entries direct people just to directories on the site, leaving them to navigate. In fact, the second bullet point on the page refers to the NIDES directory, and we know from the Swedish publication that there's an article in the NIDES directory that is referenced. So there's an evidence of navigability going back to 1994 and 1995 in those entries, and they don't even try to dispute those. If we look at the Lunt email from December of 1996, because Lunt was just directed to the club directory and not even to a specific file name, they argue that she was an employee and they cite the record for that. Then they argue that she had special access to the site, and they don't cite anything in the record because they came forward with no evidence from anything in the record, because there is no evidence that she had any special access, nor is there any evidence that employees generally had any special access, and they note they had 2,000 employees, nor is there any evidence that navigability would be any different if you did have a special password. And, in fact, they have not even come forward with any evidence in this case that there is such a thing as a non-navigable FTP site when these record documents show that people did have to navigate the site. If you go forward to 1997, there are the email messages, including the ones using asterisks, and in 2006 there's evidence of what the site looked like and how it was navigable back then. I see that my time is up. All right. Thank you, sir. Mr. Shruginbroth? Thank you, Your Honor. Let me address the key points in reverse order. First of all, Judge Moore of Klopfenstein, that's a dissemination case. That's a case where there was a public dissemination in the faces of the people who were equipped to understand and take the information. The court, in fact, went out of its way to observe that the key information could be gleaned from one or two slides that sat on a poster board for three straight days. That is a completely different situation than this case. It doesn't make any sense to require an index in a case where you've got a public demonstration dissemination in the faces of the audience. Judge Mayer asked about the Cronin case. Even in that case, where there was a finding of no publication, you at least had a title of a paper that described the contents of the paper. I won't try to repeat it because it's a long, chemical name, but the title was very descriptive of the subject matter of that paper. No publication. But wouldn't you say that the conference, NDSS, that cyber folks know what that conference acronym stands for, that it generally covers cyber security? And so while you may not know the exact content of the paper, wouldn't it give you the subject matter? That's an argument and that's an inference that defendants want on their favor. There's no evidence of that. There's no declaration from somebody in the record saying, hey, everybody knew what NDSS was. Maybe it's plausible, but this was decided in summary judgment against us on the eve of trial, with the result being that the patent portfolio is wiped out. So a seven-day temporary residence of a file that says NDSS.ps has taken away SRI's patent portfolio in this area. There's nothing in this court's case law that, to me, sanctions that harsher result. If you had searched, suppose you had gone to the FTP site and you were looking around for information relating to Emerald. This is all about Emerald. You wouldn't have found this paper. There's nothing in the title that would have allowed you to find Emerald, even if you could have searched. Well, you would have gone to the Emerald folder and you would have seen NDSS, and if you were a sophisticated cyber person and you knew of the conference, you would pop it open and look at it. But, Your Honor, with all due respect, if you know where you're going to end up, you would make the choices that the district court said you should make. You go to the FTP site initially, and this is in the court's opinion at A3515. There are actually six subfolders under the publication folder, six subfolders, each of which has, God knows what else, other publications and other subfolders. Are they NDSSs as well? Of course not. None of them. The titles are, in many cases, cryptic. I don't know what all of them are, Your Honor, but they're in the record at 3515. But you could look at NDSS, and that might have been just the list of people who were going to participate. You don't have any idea that this is a paper. Sure, sure. But, counsel, did you put any evidence in the record? See, this is my problem. Summary judgment, you're right, we shouldn't rule on fact questions, and the court below certainly shouldn't either, but there has to be a genuine dispute over a material issue of fact. So what evidence did you all put in the record that causes a dispute? Well, of course, our fundamental argument is that the whole navigability question is beside the point. But I looked at these two e-mails again. I sat here and found them at 9877 and 9878 of the record, and there's two e-mails, not one, two, one to a Terry Champion and the second one to a Teresa Lunt, and both of them suggest navigating through the pub directory. In your initial argument, you said there was one e-mail that did that. There's actually two distinct ones. Those e-mails make an interesting point. Four is one of the four e-mails of the seven that defendants point to. There's the Danielson e-mail, the Champion e-mail, the Wood e-mail. You're running out of time. All four of those show that in those e-mails, they were directed to the pub folder, not to the Emerald folder. And yet in this case, they want an inference that somebody who was searching the site. No, the e-mail says pub slash Emerald. So, I mean, that's pub folder. Then go to the Emerald folder within the pub folder. Emerald is in the name of the file in that case. It's not a separate folder. There's no slash after it. You're right. So even in many of their own examples, people are going to a different folder from information on Emerald. They want an inference in their favor. Thank you. Thank you, Your Honor. The case is submitted. The court will rise.